MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2017 ME 174
Docket:        Wal-17-57
Submitted
  On Briefs:   July 20, 2017
Decided:       August 1, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

IN RE MYRA B. et al.

PER CURIAM

[¶1] The parents of Myra B. and Nicole B. appeal from a judgment of the District Court (Belfast, *Worth, J.*) terminating their parental rights to the children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i), (b)(ii) (2016). They challenge the sufficiency of the evidence to support the judgment and the court's discretionary determinations of the children's best interests. Because the evidence supports the court's findings and discretionary determinations, we affirm the judgment.

[¶2] Based on competent evidence in the record, the court found by clear and convincing evidence that the parents were unwilling or unable to protect the children from jeopardy within a time reasonably calculated to meet their needs, unable to take responsibility for the children within a time reasonably calculated to meet their needs, and that termination of their parental rights was

2

in each child's best interest. *See In re Caleb M.*, 2017 ME 66, ¶ 27, 159 A.3d 345.

The court based this determination on the following supported factual findings:

> At the jeopardy hearing . . . , the parties agreed and the Court found that Myra and Nicole were in circumstances of jeopardy in the care of [either parent] due to:
>
>> serious abuse or neglect as evidenced by the threat of serious harm, including serious injury, and/or serious mental and emotional impairment, and the deprivation of adequate food, clothing, shelter, supervision, and/or care. This abuse or neglect is due, in part, to unsanitary and unsafe conditions of the home, the ongoing exposure of the children to significant conflict and domestic violence, and [each parent's] insufficiently and inconsistently treated mental health[.]
>
> . . . .
>
> Nicole and Myra have been living with their maternal aunt . . . since being placed there by agreement in April, 2015, an arrangement continued when the children came into the State's custody in May, 2015. When the children first moved into the [foster] home, they presented with many problems. Myra was self-abusive, biting and hitting herself, and striking her head against walls and floors. Nicole had the habit of hiding behind furniture and inside closets. They have hurt themselves, each other and third persons, damaged property and disrupted classrooms. The children have described seeing their parents fight and hurt each other, hurt their half-brother . . . and hurt them. Whenever the girls hear a raised voice or an angry voice, they start to act badly, or try to get away and hide. One of the children has told [the foster mother] that she is scared of her mother, and does not want to be hurt anymore. She has also said that she does not like it when daddy takes a belt to her. Both children have required psychiatric hospitalization.

. . . In their aunt's home, their aggressiveness against each other has diminished. They have gained some ability to be calm and non-violent. However, . . . the girls still have grave behavioral and mental health struggles. They require consistent, supportive, informed, capable parenting.

. . . .

Unfortunately, neither parent has made sufficient progress towards the alleviation of jeopardy to be able to provide these individual girls, with their serious, particular and individual needs, with a safe, supportive home.

. . . .

. . . The [parents] have been unable to empathize with their fragile daughters and unable to place the girls' needs ahead of their own. . . . On one occasion when one of the children said that she did not want to see her parents, [the father] angrily told the child that the visit was not about her, that instead it was about his and [the mother's] rights. Both parents personalized the children's distress, telling the children when the children became anxious and upset during a visit that they were hurting their parents' feelings. . . . [The parents] do not have the capacity to make the changes necessary to protect the girls from harm. . . . [The parents] participated in numerous services, but the gains they made were minimal.

. . . .

The [parents] have struggled to consistently maintain safe and even minimally sanitary housing. They have made efforts to improve the cleanliness of their home, but its condition has varied during visits from others. . . . The state of the home remains unsafe for Myra and Nicole.

. . . .

[The parents] have tried to change, but their efforts have not resulted in changes sufficient to meet the children's needs, and to protect them from further harm. It is in the children's best interests that the reunification process end; it is time now that they know they are in a forever home and will be kept safe.

[¶3]  Contrary to the father's challenges to the court's factual findings, the determinations of the weight and credibility of the witnesses' testimony were for the trial court to make. *See In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199.  We are also unpersuaded by the mother's argument that the Department's reunification efforts were inadequate or that the alleged inadequacy rendered the evidence supporting the court's findings of unfitness insufficient. *See In re Doris G.*, 2006 ME 142, ¶ 16, 912 A.2d 572.

[¶4]  The court's supported findings were sufficient for the court to have found at least one ground of parental unfitness, *see In re I.S.*, 2015 ME 100, ¶ 11, 121 A.3d 105; the court adequately explained how the deficits of the parents render each parent unable to meet the individual needs of each child, *see In re Jazmine L.*, 2004 ME 125, ¶ 16, 861 A.2d 1277; *cf. In re Thomas D.*, 2004 ME 104, ¶ 39, 854 A.2d 195; and the court did not err or abuse its discretion in determining that termination of the parents' parental rights, with a permanency plan of adoption, is in each child's best interest, *see In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

---

Thomas F. Shehan, Jr., Esq., Searsport, for appellant father

Jeremy Pratt, Esq., and Ellen Simmons, Esq., Camden, for appellant mother

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Belfast District Court docket number PC-2015-4
FOR CLERK REFERENCE ONLY